### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **COMPASS MINERALS AMERICA, INC.,** | |
| **Plaintiff,** | |
| v. | Case No. 16-2175-JAR-GLR |
| **GAIA ENTERPRISES, INC.,** | |
| **Defendant.** | |

### MEMORANDUM AND ORDER

Plaintiff Compass Minerals America, Inc. ("Compass") brings this declaratory judgment action against Defendant Gaia Enterprises, Inc. ("Gaia"), asking the Court to declare that its trademarks do not infringe on Gaia's trademarks and that Gaia does not have valid or protectable interests in Compass's graphic and standard character marks. Before the Court is Gaia's Motion to Dismiss and/or Stay in the Alternative (Doc. 12), arguing that the Court lacks subject matter jurisdiction because there is no actual controversy. The motion is fully briefed and the Court is prepared to rule. For the reasons explained below, Defendant's motion to dismiss is denied.

**I.   Standard**

Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction and, as such, must have a statutory or constitutional basis to exercise jurisdiction.[1] A court lacking jurisdiction must dismiss the case, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is

---

[1] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1." (citations omitted)).

1

lacking.[2] The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper.[3] Mere conclusory allegations of jurisdiction are not enough.[4]

Generally, a Rule 12(b)(1) motion takes one of two forms: a facial attack or a factual attack. "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[5] "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations."[6] Here, Defendant presents a facial attack on the allegations in the Complaint, to which several exhibits are attached. The Court therefore considers whether the allegations in the Complaint, if accepted as true, are sufficient to establish jurisdiction.

## II.     Jurisdictional Facts

The following relevant facts are alleged in the Complaint and accepted as true for purposes of this motion. Compass is a leading producer of salts, minerals, plant nutrients, and deicing products, including pet-friendly deicing products sold under its SAFE STEP® and SURE PAWS® trademarks used in combination. Since at least 1971, Compass (directly and through its predecessor entities) has used its SAFE STEP® trademark continuously and extensively in

---

[2]*Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

[3]*Montoya*, 296 F.3d at 955.

[4]*United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[5]*Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citation omitted).

[6]*Id.* at 1003 (citation omitted).

interstate commerce. Compass's SAFE STEP® trademark has been a U.S. registered trademark on the Principal Register since August 2, 1977.

Compass has been using its SURE PAWS® trademark continuously and extensively in interstate commerce since at least 2010; it has been registered since May 17, 2011. Compass only uses its SURE PAWS® mark in combination with its SAFE STEP® mark. Compass's SAFE STEP® SURE PAWS® product is sold nationwide through a variety of chain stores including True Value, Ace Hardware and Do it Best. The product is also sold through several internet retailers such as The Home Depot online and Amazon.com.

Gaia manufactures and sells a deicing product under an alleged SAFE PAW trademark. Gaia's Competing Product has been sold nationwide at stores including Sam's Club, PetSmart, and Costco, and competes directly with Compass's SAFE STEP® SURE PAWS® product.

On July 19, 2011, Gaia filed a trademark application with the United States Patent and Trademark Office ("USPTO") for the graphic depiction of the word "SAFE PAW" juxtaposed with a drawing of the paw print of an animal. On November 10, 2011, the USPTO issued an office action against Gaia's application for SAFE PAW, requiring that Gaia disclaim the phrase "SAFE PAW" apart from the mark as a whole. Gaia responded to this requirement with a claim of acquired distinctiveness-in-part for the phrase "SAFE PAW" based on five years of continuous and substantially exclusive use. On June 12, 2012, the USPTO issued United States Trademark Registration No. 4,156,873 for the SAFE PAW graphic mark. On June 28, 2012, after the "SAFE PAW" graphic mark registered, Gaia filed an application for the standard character mark "SAFE PAW." On February 12, 2013, the USPTO issued United States Trademark Registration No. 4,288,928 for the SAFE PAW standard character mark.

On December 9, 2015, Gaia filed a Petition to Cancel Compass's SURE PAWS® trademark with the Trademark Trial and Appeal Board ("TTAB"). In the Petition to Cancel, Gaia alleges that it has used its mark SAFE PAW since at least May 1, 1995. Gaia claims in the Petition to Cancel that "Registrant's SURE PAWS mark, when applied to the Registrant's goods, creates a false and misleading suggestion of a connection with the Petitioner's SAFE PAW marks creating a likelihood of consumer confusion as to the source of Petitioner's goods such that consumers are likely to believe that Respondent is the source of said items."[7] To date, Gaia has never challenged the validity of the SAFE STEP® trademark. However, Gaia does assert in the Petition to Cancel that consumers are "likely to be confused when seeing the similarity of the products."[8]

Following the cancellation petition, counsel for Gaia communicated to counsel for Compass that Gaia's dispute with Compass regarding the SURE PAWS® mark cannot be resolved without the payment of money or the provision of other consideration by Compass beyond the cessation of use of the SURE PAWS® trademark and the cancellation of the SURE PAWS® trademark registration. Gaia has also demanded that Compass stop using its SURE PAWS® mark.

Compass filed this action on March 18, 2016, seeking declarations of noninfringement and invalidity of the SAFE PAW graphic and standard character marks pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. On June 30, 2016, The TTAB suspended the TTAB proceedings until this case is resolved because this action "may be dispositive of or have a bearing on the Board case."[9]

---

[7] Doc. 1, Ex. I ¶ 12.

[8] *Id.* ¶ 6.

[9] Doc. 18, attach. 1 at 2.

## III. Discussion

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[10] The Act presents two jurisdictional hurdles: (1) the declaratory judgment plaintiff must present a suit based on an "actual controversy"; and (2) if there is an actual controversy, the Court must "consider a number of case-specific factors in deciding whether or not to exercise [its] statutory declaratory judgment authority."[11]

### A. Actual Controversy

The first jurisdictional question is whether this case presents an "actual controversy." The standard no longer requires reasonable apprehension of litigation.[12] The Supreme Court has explained that the Court must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[13]

Gaia argues that the TTAB opposition proceeding is insufficient alone, or in conjunction with the vague facts alleged in the Complaint about counsels' communications, to constitute an actual controversy. Compass points the Court to the nature of Gaia's cancellation action against Compass before the TTAB, as well as to Gaia's demands that Compass stop using the SURE

---

[10] 28 U.S.C. § 2201(a).

[11] *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). Compass does not dispute Gaia's argument that cancellation of a trademark is not an independent source of jurisdiction; the Court must evaluate whether the declaratory judgment claim is a sufficient basis for jurisdiction. *See, e.g.*, *Toytrackerz LLC v. Koehler*, No. 08-2297-GLR, 2011 WL 3702970, at *4–5 (D. Kan. Mar. 25, 2011).

[12] *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 129–30 (2007) ; *Surefoot*, 531 F.3d at 1241–42.

[13] *MedImmune*, 549 U.S. at 127 (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)) (footnote omitted).

5

PAWS® mark and demand for money or other compensation. In *Surefoot LC v. Sure Foot Corp.*, the Tenth Circuit discussed how much weight to afford TTAB opposition proceedings in determining whether an actual controversy exists. The court explained that TTAB opposition proceedings are one of the circumstances of the case to be considered in the Article III analysis, and cautioned that while "TTAB proceedings are not categorically irrelevant," the jurisdictional inquiry of immediacy and reality "is often a question of 'degree.'"[14] The court expressly declined to rule on whether "the existence of a single TTAB opposition proceeding, or perhaps a single cease-and-desist letter" constitutes an actual controversy.[15] In *Surefoot*, the court was careful to limit its finding of an actual controversy to the facts of that case—the defendant had filed five separate TTAB oppositions, in addition to an "extensive history" of interactions between the parties where the alleged infringer "expressly and repeatedly suggested historical and existing infringing activity by the declaratory plaintiff."[16] The court expressly declined to consider the actual controversy test "where the only indicia of a live infringement controversy is the existence of a single TTAB opposition proceeding, or perhaps a single cease-and-desist letter."[17]

Although the court did not rule on the sufficiency of a single TTAB opposition, the Tenth Circuit emphasized that the nature of the TTAB proceedings have an impact on their weight in the analysis.[18] For example, a single TTAB opposition without any indication of an infringement claim would not carry as much weight as those that include "express assertions of infringement .

---

[14]*Surefoot*, 531 F.3d at 1247 (quoting *Maryand Cas.*, 312 U.S. at 273).

[15]*Id.*

[16]*Id.*

[17]*Id.*

[18]*Id.* at 1246–47.

. . or even a proxy fight for, an underlying infringement dispute."[19]  And lower courts that have considered the weight of TTAB opposition proceedings or cease and desist letters in the jurisdictional analysis have generally held that they may suffice when coupled with other indications of a substantial controversy, such as allegations by the declaratory judgment plaintiff of actual use that does not infringe on the defendant's trademark,[20] letters that contain language indicating a threat of litigation or an allegation of trademark infringement,[21] or settlement proposals that include a threat that litigation would be imminent if the defendant's settlement proposals are rejected.[22]

Here, Gaia's Petition to Cancel clearly asserts trademark infringement.  It claims that Gaia has continuously and extensively used the SAFE PAWS mark since 1995, before Compass's first use of the SURE PAWS mark, that Gaia's use has been known to Compass, that the parties' competing products are similar deicing products and are sold in the same marketplaces, that Compass's product is inferior and thus may tarnish Gaia's mark, and that Compass's use of its mark is likely to cause consumer confusion among.  In addition to these trademark infringement allegations, Compass alleges in this case that Gaia has stated that the dispute "cannot be resolved" unless Compass stops using the mark, or at least pays compensation for its use of the mark.  Moreover, if the parties were reversed and Gaia was instead bringing a straightforward infringement claim against Compass, the nature of this controversy suggests that

---

[19]*Id.* at 1246.

[20]*Icon Health & Fitness, Inc. v. Relax-a-cizor Prods., Inc.*, No. 12-CV-00017-SA, 2012 WL 1604376, at *2 (D. Colo. May 7, 2012).

[21]*See World Religious Relief v. Gospel Music Channel*, 563 F. Supp. 2d 714, 716 (E.D. Mich. 2008); *Blue Athletic, Inc. v. Nordstrom, Inc.*, No. 10-cv-036, 2010 WL 2836303, at *4 (D.N.H. July 19, 2010).

[22]*See Hogs & Heroes Found. Inc. v. Heroes, Inc.*, –.F. Supp. 3d–, 2016 WL 4395898, at *5–6 (D. Md. 2016) (discussing *Neuralstem, Inc. v. StemCells, Inc.*, 573 F. Supp. 2d 888, 892–93 (D. Md. 2008)).

the Court would have jurisdiction.[23] In sum, the Court finds that these facts evidence "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[24]

### B. Discretionary Factors

Having found that this case presents an actual controversy, the Court next must consider a number of discretionary factors to determine whether this Court *should* exercise jurisdiction. The factors are:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.[25]

Gaia argues that Compass's claims are made for the purpose of procedural fencing by trying to avoid the TTAB proceeding, or in the alternative, it is a preemptive filing in anticipation of a lawsuit by Gaia. Plaintiff also argues that a mere filing of a Petition to Cancel with the TTAB does not create a basis for jurisdiction. But, as the Court has already explained, Plaintiff's jurisdiction is based on a TTAB cancellation proceeding where trademark infringement allegations are clearly made, and on threatening statements made by Gaia's counsel about

---

[23]*See Surefoot*, 531 F.3d at 1245.

[24]*MedImmune*, 549 U.S. at 127 (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)) (footnote omitted).

[25]*Surefoot*, 531 F.3d at 1248 (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1995)).

Compass's use of the SURE PAWS mark.[26] The Court also disagrees with Gaia's characterization of the declaratory judgment action as speculative.

Gaia does not address the other discretionary *Mhoon* factors.  But the Court agrees with Compass that on balance they weigh in favor of this Court's exercise of jurisdiction.  A declaratory judgment would settle this controversy and clarify the legal relations at issue by determining whether Gaia's mark should be cancelled and whether Compass has infringed on Gaia's mark.  There is no risk of encroaching on state court jurisdiction since this is a federal trademark claim, and because the TTAB has stayed its proceeding pending an outcome in this case, there is no risk of an alternative remedy or that this case would supersede or supplant an ongoing administrative proceeding.[27]  In fact, Compass's Complaint fall outside of the TTAB's jurisdiction since it includes claims of noninfringement.[28]  Accordingly, the Court finds that it can and should exercise jurisdiction in this case and thus denies Gaia's motion to dismiss. The Court also denies Gaia's alternative motion to stay until the TTAB renders a decision given that since the time Gaia filed its motion, TTAB suspended the cancellation proceeding pending disposition of this case.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Gaia's Motion to Dismiss and/or Stay in the Alternative (Doc. 12) is **denied**.

**IT IS SO ORDERED.**

Dated: November 21, 2016

---

[26]Of course, if Plaintiff filed this action in anticipation of Gaia filing a trademark infringement claim, this would bolster the Court's finding that there is sufficient immediacy to this dispute, warranting the exercise of Article III jurisdiction.

[27]*See Surefoot*, 531 F.3d at 1247–48.

[28]*See Water Pik, Inc. v. Med-Systems, Inc.*, No. 10-cv-1221, 2011 WL 843916, at *3 (D. Colo. Mar. 8, 2011) (considering whether exercising jurisdiction would clarify the parties' legal relations and explaining that because Plaintiff's claims fall outside of TTAB jurisdiction, its decision would be limited).

                                              <u>S/ Julie A. Robinson</u>  
                                              JULIE A. ROBINSON  
                                              UNITED STATES DISTRICT JUDGE